UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA S.,

      Plaintiff,                  Case No. 2:24-cv-11562
                                     Honorable Anthony P. Patti

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S AMENDED MOTION
FOR SUMMARY JUDGMENT OR REMAND (ECF No. 8), GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10),
and AFFIRMING THE DECISION OF THE COMMISSIONER OF
SOCIAL SECURITY**

## I.    Background

Debra S. ("DS") applied for disability insurance (DI) benefits in July 2021,

alleging disability beginning April 16, 2020 (*i.e.*, the alleged onset date (AOD)), at

which point she was 61 years old (ECF No. 4, PageID.189-190), *i.e.*, a "person of

advanced age," 20 C.F.R. § 404.1563(e).  Plaintiff's claims were denied initially in

June 2022 and upon reconsideration in October 2022.  (*Id.*, PageID.65-83, 89-93,

95-99.)

DS sought a hearing with an ALJ (*id.*, PageID.100-101), and, on June 22,

2023, ALJ Ramona Fernandez conducted a hearing, at which the claimant, her

counsel, and a vocational expert (VE) appeared (*id*., PageID.44-64).  During the

hearing, Plaintiff amended her AOD to June 15, 2020.  (*Id*., PageID.47-48.)  On

July 7, 2023, ALJ Fernandez issued an unfavorable decision.  (*Id*., PageID.27-43.)

DS requested review (*id*., PageID.184-185); however, on April 11, 2024, the

Appeals Council (AC) denied the request for review (*id*., PageID.14-19).

## II.    Instant Case & Pending Motion

On June 13, 2024, Plaintiff brought this action under 42 U.S.C. § 405(g) for

review of the final decision of the Commissioner of Social Security

("Commissioner").  The parties have consented to my jurisdiction to handle this

case through entry of a final judgment.  (ECF No. 6.)

Currently before the Court is Plaintiff's amended motion for summary

judgment or remand (ECF No. 8), which identifies two challenges to the

Commissioner's findings:

- Whether the Administrative Law Judge ("ALJ") Erred in Failing to Properly Assess Plaintiff's Residual Functional Capacity (RFC)

- Whether the Administrative Law Judge ("ALJ") Erred in Evaluating the Medical Opinion Evidence

(*Id*., PageID.993-994, 1002-1003, 1004-1012.)  The Commissioner filed a cross-

motion for summary judgment (ECF No. 10), and Plaintiff has filed a reply (ECF

No. 11).

On August 1, 2025, the Court conducted a video conference hearing (*see* ECF Nos. 12, 13), at which Attorney Erin Elizabeth Rich and Assistant United States Attorney Scott Ackerman appeared.  The Court took the case under advisement.

## III.   Standard

Plaintiff has the burden of proof on her statements of error, as she challenges the ALJ's RFC determination and treatment of the opinion evidence, each of which occurs between steps 3 and 4 of the sequential process.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  "[A] decision supported by substantial evidence must stand, even if [the court] might decide the question differently based on the same evidence." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017).  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of

a substantial right.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.

2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    Discussion

### A.    RFC (20 C.F.R. § 404.1545 & SSR 96-8p)

Plaintiff challenges the accuracy of the ALJ's RFC assessment.  (ECF No. 8,

PageID.1004-1011.)  The ALJ found that Plaintiff had the RFC . . .

> . . . to perform light work as defined in 20 CFR 404.1567(b), except:
> the claimant can stand and/or walk 4 hours of an 8-hour workday [*i.e.,*
> *exertional limitations*].  The claimant can occasionally climb, stoop,
> kneel, crouch, crawl, and balance.  She can never use ladders, ropes,
> or scaffolds [*i.e., postural limitations*].  The claimant can occasionally
> reach overhead.  She can frequently reach to side or front.  The
> claimant can frequently handle and finger [*i.e., manipulative*
> *limitations*].  She must avoid concentrated exposure to vibration.  She
> must avoid dangerous moving machinery and work at unprotected
> heights but is capable of avoiding ordinary workplace hazards [*i.e.,*
> *environmental limitations*].

(ECF No. 4, PageID.34.)  In so doing, the ALJ cited:  (1) her August 3, 2021

disability report (ECF No. 4, PageID.209-218); (2) her testimony (*see* ECF No. 4,

PageID.44-62); (3) her September 9, 2021 function report (ECF No. 4,

PageID.230-242); (4) her August 17, 2022 function report (ECF No. 4,

PageID.252-259); (5) multiple medical records; and, (6) the opinion evidence.

(*See* ECF No. 4, PageID.34-38.)  At the conclusion of her RFC assessment, the

4

ALJ noted that Plaintiff "stopped working because she was laid off, not due to her physical symptoms."  (*Id.*, PageID.38.)[1]

Given Plaintiff's age, the difference between an RFC with exertional limitations of light or sedentary work versus other types of work is significant.  *See* 20 C.F.R. § 404.1568(d)(4) ("*Transferability of skills for persons of advanced age.*").  At Step 4, the ALJ concluded that Plaintiff "is capable of performing past relevant work as an administrative assistant (DOT 201.362-030)[,]" (ECF No. 4, PageID.38), which is a skilled and sedentary position (*id.*, PageID.72, 82, 290).

In multi-faceted fashion, Plaintiff disputes the finding that she is able to perform a reduced range of light work, contending it "falls short of including the entirety of Plaintiff's documented limitations."  (ECF No. 8, PageID.1004.)

### 1.    Accounting for severe impairments

Plaintiff contends "the ALJ *failed to include the full picture* of limitations caused by the Plaintiff's degenerative disc disease of the lumbar spine, lumbar spondylosis, degenerative disc disease of the cervical spine, cervical spondylosis,

---

[1] Indeed, at the June 22, 2023 administrative hearing, Plaintiff testified that she was last employed "in April of 2020, when [she] was laid off due to COVID."  (*Id.*, PageID.49.)  Consistently, at the August 1, 2025 hearing before this Court, Plaintiff's counsel acknowledged the fact that Plaintiff's work ended when "she was laid off due to Covid, that is correct" although she argued that her client was "also … experiencing significant physical symptoms at that time as well" and "was pushing herself through" when her "physical symptoms really came to a head in … 2020-2021" making the end of her work "a culmination of both."

cervical stenosis, degenerative joint disease of the shoulders, and osteoarthritis of the left knee," (ECF No. 8, PageID.1005 (emphasis added)), *i.e.*, the very same conditions the ALJ found to be severe at Step 2 (ECF No. 4, PageID.33). Plaintiff contends these conditions "result[] in severe pain with bilateral upper and lower extremity numbness, tingling, and weakness that would limit her ability to engage in the standing/walking requirements of light work, and would result in greater limitations affecting the movement of the neck (inability to keep head in static position) and use of the upper extremities for handling and fingering. (*Id.*) However, not only does she fail to provide any medical record citations in support of this statement, but also her appeal does not delineate a subjective statements challenge (*see* 20 C.F.R. § 404.1529, SSR 16-3p).

## 2. Considering a closed period

Next, with respect to the use of her upper extremities, Plaintiff initially took issue with the ALJ's statement: "The record indicates that the claimant recovered well from her shoulder surgeries, with physical therapy records from both reflecting significant improvements. *There was little treatment for shoulder/upper extremity pain after mid-2021.* Any residual effects are adequately accounted for in the residual functional capacity." (ECF No. 4, PageID.38 (emphasis added).) (ECF No. 8, PageID.1005-1006, 1010.) Given the ALJ's reliance on Plaintiff's mid-2021 improvement, Plaintiff contended that the ALJ "should have considered

a closed period or a different RFC for that time period . . . ."  (ECF No. 8,

PageID.1006, 1010.)  In other words, Plaintiff advocated for a closed period of

disability from June 15, 2020 (the amended AOD) to the April, May, July and

August 2021 cited improvements, as reported by Plaintiff or reflected in physical

therapy notes.  (*See* ECF No. 4, PageID.36-37 (*citing id*., PageID.432-433 [May

21, 2021 shoulder post-op visit], 434 [July 27, 2021 shoulder post-op visit], 393-

396, 454-457 [August 4, 2021 physical therapy plan of care]; 526 [August 11,

2021 discharge summary]).)[2]

The Commissioner responded to this argument (*see* ECF No. 10,

PageID.1024-1025), and Plaintiff replied thereto (*see* ECF No. 11, PageID.1038-

1039); however, Plaintiff orally withdrew this argument at the August 1, 2025

hearing because her counsel "think[s] that's a moot point at this point."

### 3.    Upper extremities (*e.g.*, lifting and/or carrying)

Plaintiff also contends she "underwent extensive treatment for bilateral

rotator cuff repairs dating back to February 2020, including surgical intervention,

physical therapy, injections, and medication management[,]" for which she

provides a string cite of records from Nathan A. Rimmke, M.D., dated February

---

[2] Plaintiff made a similar argument – *i.e.*, for a closed period beginning June 15, 2020 and ending August 2021 – in her August 16, 2023 letter to the Appeals Council, although not before the ALJ.  (ECF No. 4, PageID.296.)

2020 to July 2021.  (ECF No. 8, PageID.1006 (*citing id.*, PageID.403, 407, 415, 420, 424, 426-428, 430, 432-434).)  Indeed, Plaintiff underwent surgery on:

- July 27, 2020, when Dr. Rimmke performed a right shoulder arthroscopic rotator cuff repair, extensive debridement, and subacromial decompression (ECF No. 4, PageID.415-419; *see also id.*, PageID.724-727); and,

- April 5, 2021, when Dr. Rimmke performed "left shoulder arthroscopic rotator cuff repair, extensive debridement, subacromial decompression, and open biceps tenodesis" (*see id.*, PageID.383-384, 442-445, 477).

Notwithstanding her treatment, Plaintiff contends that the June 23, 2021 opinion letter from Kristen Bentley, PT, DPT (ECF No. 4, PageID.382) supports Plaintiff's reports of pain, sleeping upright, and inability to lie in the supine position at the July 3, 2021 office visit with Stephen R. Richardson, D.O. (*see* ECF No. 4, PageID.656-657).  (ECF No. 8, PageID.1006.)  Moreover, Plaintiff contends that her hearing testimony (ECF No. 4, PageID.52, 55, 56) is consistent with Dr. Richardson's July 3, 2021 office visit records (*see id.*, PageID.656), Plaintiff's September 29, 2021 function report (ECF No. 4, PageID.235; 230-237), the December 29, 2021 cervical spine MRI and lumbar spine MRI (ECF No. 4, PageID.787-790), and a March 22, 2022 musculoskeletal exam by Brittany Murphy, P.A. / Roger Haddad, D.O. (ECF No. 4, PageID.801-810 at 805-806), as

well as various records from Dr. Rimmke (*see id.*, PageID.403, 407, 415, 420, 424, 426-428, 430, 432-434).  (*See* ECF No. 8, PageID.1006-1008.)[3]

The Court specifically notes that Plaintiff received a steroid injection in her right shoulder on May 21, 2021 (ECF No. 8, PageID.432-433), and she reported some improvement at her July 27, 2021 visit, although she also described popping and pain at night (*id.*, PageID.434-435).  The ALJ acknowledged this information in the written decision.  (*Id.*, PageID.37.)  During the August 1, 2025 hearing, the focus of Plaintiff's upper extremity limitations was on her ability to perform the lifting and/or carrying requirements of exertional work, and Plaintiff  has not provided an adequate explanation to dispel the ALJ's apparently accurate statement that "[t]here was little treatment for shoulder/upper extremity pain after mid-2021."  (ECF No. 8, PageID.38.)  Upon consideration of the motion papers and the oral argument of counsel during the August 1, 2025 video hearing, Plaintiff has not pointed to evidence – much less objective medical evidence – showing that

---

[3] Within this portion of her motion, Plaintiff argues:  "[N]owhere in the records does Plaintiff state that she has an inability to lift greater than 5 pounds[.]"  (ECF No. 8, PageID.1007.)  However, in her function report(s), Plaintiff stated, "I can't lift over 5-10 pounds . . . [,]" (ECF No. 4, PageID.235, 257), and, at the administrative hearing, Plaintiff testified that she could lift "[a]bout five pounds[,]" (ECF No. 4, PageID.52).  Indeed, within her written decision, the ALJ noted Plaintiff's testimony that "she could lift about five pounds[,]" and Plaintiff's reported "endurance of lifting 5-10 pounds . . . ."  (*See* ECF No. 4, PageID.35.)

she is *unable* to *occasionally* lift and/or carry 20 pounds or frequently lift and/or carry 10 pounds.  *See* 20 C.F.R. § 404.1567(b) ("Light work.").[4]

### 4.   Lower extremities (e.g., standing and/or walking, sitting)

As to her lower extremities, Plaintiff highlights:  (a) her September 29, 2021 function report (ECF No. 4, PageID.235); (b) perhaps the March 22, 2022 musculoskeletal exam by Brittany Murphy, P.A. / Roger Haddad, D.O. (ECF No. 4, PageID.801-810 at 805-806); (c) the April 30, 2022 consultative examination report (ECF No. 4, PageID.835-836); and, (d) her June 22, 2023 hearing testimony (*id*., PageID.51-55, 59, 61).  (*See* ECF No. 8, PageID.1007-1010.)

Preliminarily, to the extent Plaintiff relies upon her function report, her hearing testimony, or any subjective reports to her medical treaters when asserting that "the RFC provides for no limitations regarding Plaintiff's time off-task due to her severe pain, need to change positions between sitting and standing, limited mobility of the neck, and occasional use of the bilateral extremities for repetitive

---

[4] At her June 22, 2023 administrative hearing, Plaintiff testified about injections to the neck and lower back being "very costly" or "too much money for no guarantee."  (ECF No. 4, PageID.53-54.)  As addressed during the August 1, 2025 hearing before this court, this testimony is distinct from Plaintiff's assertion in her September 30, 2024 motion that, "[as] for her neck pain, Plaintiff testified to injection therapy being recommended, but due to costs over $7,000.00 per injection, she has been *unable to afford* such medical intervention to reduce her pain . . . ."  (ECF No. 8, PageID.1009 (emphasis added).)

handling and fingering[,]" (ECF No. 8, pageID.1011), Plaintiff's statements of error do not include a challenge to the ALJ's evaluation of Plaintiff's subjective symptoms (*see* 20 C.F.R. § 404.1529, SSR 16-3p).  (*See also* ECF No. 11, PageID.1036-1037.)[5]  In any case, the Court inquired as to whether the ALJ accurately summarized Plaintiff's testimony; Plaintiff agreed that she had.  (ECF No. 4-1, PageID.35.)

Moreover, to the extent Plaintiff relies upon medical records, she specifically references:

- the March 22, 2022 musculoskeletal exam by Brittany Murphy, P.A. / Roger Haddad, D.O. (ECF No. 4, PageID.801-810 at 805-806) and/or the April 30, 2022 consultative examination report (ECF No. 4-1, PageID.835-836) in her motion (ECF No. 8, PageID.1007, 1008);

- the August 11, 2021 physical therapy discharge summary (ECF No. 4, PageID.526-529) and Dr. Richardson's October 1, 2020 office visit notes (*id.*, PageID.663-664) in her reply (ECF No. 11, PageID.1037); and,

- the June 23, 2021 opinion letter from Kristen Bentley, PT, DPT (ECF No. 4, PageID.382) and the December 29, 2021 lumbar spine MRI (ECF No. 4, PageID.789-790) during the hearing before this Court.

---

[5] In her motion, Plaintiff contends "the ALJ attempts to undermine the severity of Plaintiff's allegations by indicating that 'she has only sought out conservative treatment . . . .'"  (ECF No. 8, PageID.1009); however, there is no such statement in the ALJ's written decision, as Plaintiff's attorney acknowledged at oral argument that this phrasing was intended to be just counsel "summarizing" what the ALJ "essentially" was doing, not the ALJ's actual words.

At oral argument, the focus of Plaintiff's lower extremity limitations was on her need for a sit/stand option, and, when asked for evidence of her "need to alternate between sitting and standing . . . [,]" (ECF No. 11, PageID.1037), Plaintiff focused on the lumbar spine MRI and the June 23, 2021 physical therapy opinion letter.

However, she has not pointed to any medical opinion that she needs a sit/stand option, and it would be inappropriate for the Court to reach that conclusion by interpreting or evaluating the objective medical evidence – such as the lumbar spine MRI – to reach that conclusion.  *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-829 (E.D. Mich. 2017) (Patti, M.J.) (an ALJ is not qualified to interpret raw data in a medical record) (listing cases).  Put another way, neither the ALJ nor the Court can be tasked with evaluating the objective medical evidence as Plaintiff would like.  *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan*).  Moreover, neither the June 23, 2021 PT opinion letter nor the April 30, 2022 consultative examination report opines on Plaintiff's ability to sit and/or stand in an 8-hour workday.  (See ECF No. 4, PageID.382, 838.)  Furthermore, while Plaintiff suggested to the Court that left leg numbness mentioned by a one-time consulting pain specialist should have resulted in a sit-stand option in the RFC, the ALJ expressly noted the March

12

2022 assessment that there was diminished sensation to sharp touch in the left lower extremity (*see id.*, PageID.37, 805), and Plaintiff's counsel admitted at oral argument that no limitations were recommended and no objective tests were performed with regard to left leg numbness or neuropathy by any other medical professional, *e.g.*, an EMG, including Plaintiff's own internist.[6] Accordingly, Plaintiff is not entitled to relief on her RFC statement of error. In the end, as was clear at oral argument, Plaintiff was inviting the Court to re-weigh the evidence and find that the ALJ erred by not applying a sedentary restriction in the RFC (which, in light of Plaintiff's age, could have been work preclusive, *i.e.*, "gridded her out"); however, the standard of review does not permit this. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (it is not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts

---

[6] To the extent the pain specialist's one-time finding could be construed as opinion evidence, three of the factors used by the Commissioner in considering medical opinions would appear to diminish the value of a one-time examiner like the pain specialist in question, namely: relationship with the claimant, length of the treatment relationship, and frequency of the examinations. 20 C.F.R. § 416.920(c). This diminished value was true even under the prior opinion evidence regulation. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("Because Dr. Boen examined Tucker only once, his opinion is entitled to no special deference.") (internal citation omitted); *Maturen v. Comm'r of Soc. Sec.*, No. 19-910, 2021 U.S. Dist. LEXIS 37137, *11 (W.D. Mich. Mar. 1, 2021) ("Finally, Plaintiff fails to show that Dr. Bentley's report is material. As the Commissioner notes, Dr. Bentley is a one-time examiner who did not have a longitudinal history treating Plaintiff. His opinion is therefore of limited value as it pertains to the period of time the ALJ considered.")

in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

## B.   Opinion evidence (20 C.F.R. § 404.1520c)

Plaintiff also challenges the ALJ's opinion evidence review.  (ECF No. 8, PageID.1011-1012.)  The ALJ's written decision referenced a June 23, 2021 opinion statement from Kristen Bentley, PT, DPT (ECF No. 4, PageID.382), an April 30, 2022 consultative examination report from Peter Domenig, D.O. (*id*., PageID.835-839), a May 13, 2022 physical RFC assessment from state agency medical consultant Myung Ho Hahn, M.D. (*id*., PageID.70-72), and an October 25, 2022 physical RFC assessment from state agency medical consultant Robert Digby, M.D., M.P.H. (*id*., PageID.79-82).  (*See* ECF No. 4, PageID.37-38.)

### a.   Consistency and supportability

Plaintiff's opinion evidence argument takes three forms.  First, Plaintiff challenges the ALJ's finding that the state agency opinions "are considered persuasive," as to which the ALJ explained:

> They are consistent with the records reflecting spine and shoulder abnormalities, and with the claimant's statements regarding difficulty standing and walking for long periods.  It is found that due to neck pain, an additional limitation regarding handling and fingering is supported.

(ECF No. 4, PageID.38.)  Presumably referencing 20 C.F.R. § 404.1520c(c)(1)-(2), Plaintiff contends that "[t]he ALJ's consistency and supportability assessment is

based on the Plaintiff's spine and shoulder abnormalities, but fails to take into consideration the additional limitations of the Plaintiff's knee osteoarthritis, left lower extremity paresthesia, antalgic gait, inability to hold head in a static position, and need to take frequent breaks[,]" and "the opinions are inconsistent with the record as a whole." (*See* ECF No. 8, PageID.1011-1012.)

However,  as the Commissioner accurately notes, "[w]hile Plaintiff claims that the State agency consultants' findings are not consistent with the evidence as a whole, she fails to cite any evidence that supports her position." (ECF No. 10, PageID.1033.)  Moreover, the Commissioner accurately points out that the ALJ assessed an *additional* handling and fingering limitation (*compare* ECF No. 4, PageID.71, 80 [unlimited]; *with*, id., PageID.34, 38 [frequent]).  (ECF No. 10, PageID.1030, 1032-1033.)  *See Warren v. Comm'r of Soc. Sec.*, No. 2:13-CV-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (Battani, J.) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more restrictive RFC than that opined by the claimant's physician).

### b.      Relationship with the claimant

Second, Plaintiff also seems to reference 20 C.F.R. § 404.1520c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."), as Plaintiff points out that Hahn and Digby are neither treating nor examining

15

physicians. (ECF No. 8, PageID.1012.) However, the ALJ's opinion evidence

review does not mistake the relationship between Plaintiff and each medical

professional, as the ALJ noted that Bentley is a DPT (Doctor of Physical Therapy),

Peter Domenig, D.O. was the consultative examiner, and – albeit unnamed – Hahn

and Digby's opinions were as state agency medical consultants. (ECF No. 4,

PageID.37-38). Moreover, the "Treating Physician Rule," *see* 20 C.F.R. §

404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017.")

– to the extent it is being advocated here – was abrogated by 20 C.F.R. §

404.1520c ("How we consider and articulate medical opinions and prior

administrative medical findings for claims filed on or after March 27, 2017.").

### c.    Completeness of record

Finally, Plaintiff contends Hahn and Digby did not have – at the time of their

May 13, 2022 and October 25, 2022 physical RFC assessments – "the benefit of

reviewing the entire and up-to-date record that shows continued, uncontrolled

symptoms, and demonstrate greater limitations despite continued treatment[,]" and

"State Agency physicians who had only a limited view of the record before them at

the time of their decision at the initial level and upon reconsideration, are not

persuasive[.]" (ECF No. 8, PageID.1012.) Yet, it seems Hahn reviewed records as

late as the April 30, 2022 consultative examination (*see* ECF No. 4, PageID.68, 72,

835-839), Digby reviewed records as late as Plaintiff's August 17, 2022 function

16

report (*see* ECF No. 4, PageID.78, 81, 252-259), and it is not clear upon which

medical records in the administrative transcript that post-date the October 25, 2022

state agency medical consultant's opinion Plaintiff relies – *e.g.*, December 2022

(*id*., PageID.932-933, 951-952), January 2023 (*id*., PageID.893-897, 824-825, 946-

948), March 16, 2023 (*id*., PageID.929-931, 943-945, 949-950), or April 10, 2023

(*id*., PageID.890-892, 942).

In her reply, Plaintiff suggests that the state agency opinions from 2022 were

"outdated" by the time of the ALJ's July 7, 2023 opinion, but she does not provide

any record citation for her statement that the "outdated" state agency opinions

"failed to account for significant subsequent evidence, including imaging,

treatment records, and Plaintiff's worsening symptoms."  (ECF No. 11,

PageID.1038.)  Moreover, Plaintiff relies upon the following direction from the

Sixth Circuit:

> When an ALJ relies on a non-examining source who "did not have the
> opportunity to review" later submitted medical evidence, especially
> when that evidence "reflects ongoing treatment," we generally require
> " 'some indication that the ALJ at least considered these [new] facts
> before giving greater weight to an opinion that is not based on a
> review of a complete case record.' " *Blakley v. Comm'r of Soc. Sec.,*
> 581 F.3d 399, 409 (6th Cir.2009) (quoting *Fisk v. Astrue,* 253
> Fed.Appx. 580, 585 (6th Cir.2007)).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).  Yet, in

Plaintiff's case:  (1) the ALJ's RFC assessment expressly references medical

records dated as late as July 2022 (ECF No. 4, PageID.37); (2) records post-dating

17

Dr. Digby's October 25, 2022 opinion were part of the record before the ALJ (ECF

No. 4, PageID.43) – such as December 2022 (*id.*, PageID.932-933, 951-952),

January 2023 (*id.*, PageID.893-897, 824-825, 946-948), March 16, 2023 (*id.*,

PageID.929-931, 943-945, 949-950), or April 10, 2023 (*id.*, PageID.890-892, 942);

and, (3) the ALJ's decision was rendered "after careful consideration of all the

evidence" and "after careful consideration of the entire record[.]" (ECF No. 4,

PageID.31, 32, 34.)  Finally, Plaintiff's characterization of a March 22, 2022

musculoskeletal exam (ECF No. 4, PageID.805-806) as occurring months *after*

Hahn's May 13, 2022 and Digby's October 25, 2022 opinions (*see* ECF No. 4,

PageID.72, 82) is mystifying.

    In the end, Plaintiff is not entitled to relief on her opinion evidence statement

of error.

## V.   Order

    For the reasons detailed above, Plaintiff has not shown legal error that would

upend the ALJ's decision, and the Court finds that it is supported by substantial

evidence.  The Court is satisfied that the ALJ acted well inside the

"'zone of choice' within which the Commissioner can act without the fear of court

interference." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation

omitted).  Accordingly, Plaintiff's amended motion for summary judgment or

remand (ECF No. 8) is **DENIED**, Defendant's motion for summary judgment

(ECF No. 10) is **GRANTED**, and the decision of the Commissioner of Social

Security is **AFFIRMED**.

      **IT IS SO ORDERED.**

Dated:  August 14, 2025

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE